Good morning. My name is Jean Hobler and I represent petitioner Nikolai Bondarenko. We are here today to determine. Yes. If you could just speak up a little bit. Absolutely. Let me see if I can move that a little closer. Does it help? I'm not normally known as a quiet person. At any rate, we are here today to determine whether or not Mr. Bondarenko was convicted of a crime of violence in order to subject him to deportation. Mr. Bondarenko has been a legal permanent resident of the United States since 1995 and arrived here as a refugee in 1993. To date, until about 8.05 this morning, the government's position is and always has been that we are looking at this under the modified categorical approach. The court acknowledged a notice of additional case law that was received this morning. It was received by me at about 8.05 this morning regarding a case that I have. I was previously unaware of. I don't intend to open a discussion on the merits of that particular case at this point, other than to note that this is not the position of the government until eight o'clock this morning. And I think that the government had considering the case was published in 2002. The government certainly had plenty of time to marshal its arguments and present it to the court before eight o'clock this morning. Well, let's just go on the theory that has been in the briefing all along. Why aren't the documents to which we may refer sufficient to demonstrate the use of actual force? I think, Your Honor, the primary document that we look at is the judgment of conviction and what the court based the conviction upon. The judgment of conviction itself never references the plea agreement or the criminal information. The plea agreement does not use any indication that there was a violent force used. And, in fact, it references a criminal information that will be later developed. So at the time Mr. Bondarenko signed that plea agreement, he did not know that the government he did not necessarily know. It's not in the record. Nothing in the record demonstrates that Mr. Bondarenko had any idea that individual facts might be included within that criminal information. So are you saying the information that isn't the information that he pled guilty to? Well, Your Honor, what I am saying is that it is and always has been the government's obligation to clearly establish that the crime was a crime of violence. And I think the case law is pretty clear that the documents relied upon for that understanding. A later court must be able to look at them and unequivocally understand that the conviction was for a crime of violence and that the defendant pled guilty to underlying facts. Well, the immigration judge made that finding. He made that finding, Your Honor, based upon the notice to appear that was submitted by the Immigration and Naturalization Service. Let me get to my next question, which is the standard of review. If the immigration judge was satisfied, based on the record evidence that we can look at, that the inference could be made that that was the charge to which he pled guilty, don't we have to find that it is clear error in order to overturn it, that no reasonable fact finder could have made that determination on the basis of that evidence? Well, Your Honor, I think what we need to look at, and yes, I think it is clear error, but I think based on the notice to appear, which is what the immigration judge based. You think it's clear, but I can comment that rules of evidence are relaxed in administrative proceedings. We have the evidence that the judge looked at to grant you the relief that you're asking for. As a matter of law, don't we as a reviewing court have to conclude that that no reasonable fact finder could have reached that conclusion on the basis of this evidence? It's too much of an inferential leap. Well, and Your Honor, I think that we need to return again to the fact that it is and always has been the government's burden to clearly establish these things. I know you don't want to answer my question, but it's really a pretty simple question. What is my standard of review here? Am I not articulating the standard of review correctly, or do you just not want to answer my question? Well, I'm sorry. I absolutely do want to answer your question. So have I got the standard right? The standard is correct, Your Honor. Okay. The standard is correct. And now I understand your argument to be even applying that standard. Even applying the standard. That's not good enough. And let me tell you why. All right. The immigration judge clearly based his opinion that this was a crime of violence upon Mr. Bondarenko's admission to the information in the notice to appear that was issued by the Immigration and Naturalization Service. That document has nothing in it except for the generic terms of the statute. It does not reference any underlying facts. Okay. That's pretty clear both from the colloquy between Mr. Bondarenko and the immigration judge and also from the opinion itself, the only document that is referenced in relation to. But the criminal information is in the record starting at page 207. It is in the record. And it says that he kicked the police officer. It does say that, Your Honor. So that's what he pleaded guilty to. That was in the record before the immigration judge. Why isn't that the actual use of violence? I am not sure that every link in the chain that that is what he pled guilty to is in the record, Your Honor. And I base that upon the judgment of conviction, which references neither that criminal information nor the plea agreement that Mr. Bondarenko signed. It references a later, it references a July 19, 2004 plea. There is nothing, the transcription of that plea hearing is not in the record. We do not know what, whether Mr. Bondarenko challenged the kicking issue. We don't know. And because the burden here is the government to clearly establish every element that would make this a crime of violence, then it is the government's burden to put that information into the record. I've lost my tabs here. Where is the judgment of conviction? I've got the 204. It's 204, Your Honor. Yeah, we've got, it's very specific. This is my recollection of it. He pleads to count two. He pleads to count two, Your Honor, but he pleads to count two of a document that is never referenced. It has to be a count two of something. It can't be count two of an imaginary something. The only something that there is is the criminal information. There are two counts in it. I would point the Court to the recent decision, the very recent decision of Cisneros Perez, in which similar, I mean, we're talking about whether or not a crime is a crime of domestic violence. The gentleman was charged and convicted of simple battery, simple violence, and part of his sentence was 52 weeks of domestic violence counseling. And the Court said, well, we can infer that it's a crime of domestic violence. Inferences are not enough. We can infer that that is the criminal information that the conviction was based upon, but my position is that it was the government's obligation to clearly establish a link between those things in order to convict Mr. or in order to deport Mr. Bondarenko. That is the charge to which you put guilty. There's a distinction between what the defendant was sentenced to, what punishment was imposed, and relying on the punishment to define the crime. Here we have the crime. It's set forth in the information both by reference to the statutory citation and to the prosecuting attorney's factual description of the facts which support the elements of the crime. I don't understand why that's not enough. Well, I think, Your Honor, the link that we are missing here is that we do not have a record of what happened when Mr. Bondarenko appeared for the Court, seeing for the first time what the criminal information actually said. It is clear from Mr. Bondarenko's plea agreement that when he signed that, the criminal information did not exist. We do not know whether or not Mr. Bondarenko had any idea that it would include the words by kicking. We do not know whether or not Mr. Bondarenko challenged that when he appeared for his plea. We do not know. And without that kind of information in the record, the judgment of conviction must clearly show that the defendant pled to every underlying fact that would render this a judgment. But is the critical date the date he signs the plea agreement or the date he enters the plea? I believe... Because we're told in the judgment of conviction that he enters the plea on July 19, and the date of the information is June 11. So at the time he enters the plea, we have the information that's been around for six weeks. And I understand that, Your Honor. And I think that the point I am making is that we do not know what happened on June, let me make sure I have that, on to the July 19 plea. We do not know what happened when Mr. Bondarenko appeared, having that criminal information in front of him for the first time. We do not know whether... What difference does it make what he did if he pleaded guilty to that count? If he pleaded guilty to the count without the words by kicking, then there is no information in the record that establishes that his crime was actually violent. But how is that even a possibility if the documents that we have are just looked at by themselves? I don't even understand how that's a possibility, because the only count, too, that there is to which he can plead guilty contains this description. Well, I understand that, Your Honor, but I do believe that it is entirely possible that there was a colloquy between the court and Mr. Bondarenko and his counsel at the time he entered the plea regarding information, including in the criminalized statement. Isn't that just the opposite of what we're supposed to do with the modified categorical approach? We're supposed to look at the documents. We're not supposed to think about what might have happened or who said what to whom. We have to look at the documentation, and if the documentation demonstrates it, that's the end of it. Well, and I think that's in line with my point, Your Honor, which is all of the documentation regarding what Mr. Bondarenko actually pled to is necessary in order to determine whether or not he actually agreed to the words by kicking. My position is that this information is information that the government bore the burden of putting into the record before they brought him up to deport him. Okay. Okay. That's great. You've exceeded your time, but we'll give you back a minute for rebuttal when the time comes. I appreciate that. We'll hear from the government. Good morning, Your Honors. Nora Oscoli Schwartz for Respondent Gonzalez. I apologize for the last-minute submission of the case. I just got the case two days ago for the attorney who was scheduled to come. She was sick, and I just found it myself this morning. It does not change the government's position at all. It just absolutely dead-on supports the government's position that conviction under the statute, even though it's a state gross misdemeanor, because he was sentenced to one year and it was a crime of violence, is an aggravated felony, a crime of violence for which there is no relief. So the only relief he was seeking was termination of proceedings on the basis that he didn't he wasn't an aggravated felon who committed a crime of violence. Since he is an aggravated felon who committed a crime of violence, there's no basis for termination. And it's very clear he knew exactly what he was pleading to, because in the memorandum of plea agreement, which was dated June 11th and filed June 24th, it says, I understand that as a consequence of my plea, the judge will take as admitted all the evidence of the offense as set forth in the criminal information. That's page 213. And that's dated the same date as the criminal information. Yes. And the information is also dated June 11th and filed June 24th. They were both dated June 11th, filed June 24th. On page 208, it describes battery on a public officer and that the defendant willfully and unlawfully, and it goes on, and who the defendant knew or should have known was an officer by kicking him. He knew he was pleading to a crime of violence, kicking, and case ends there. Then the conviction document itself refers to the plea agreement of July 19th. It could have been a typo. He could have meant June 19th. But this is where we get to exhaustion. We could have found out if it was a typo or if there was another document if Petitioner had raised it at the hearing, or if Petitioner had raised it through counsel to the board saying, wait a minute, those dates don't match. And that's why exhaustion is important, because you can't come to the court now and say, gee, there's a different date, because we could have had the opportunity to correct it had it been raised below. Could have brought in the public defender, could have asked for a conforming document, could have gone to the criminal court to see if there was a document dated July 19th, or confirmed that it was a typo and should have been dated June 19th. But the plea agreement and the information saying that he was pleading to a crime of violence, which included kicking a peace officer, it's done. And the case, again, the case I cited absolutely confirms that, except it was two private citizens. In this case, he was lucky that all he was charged with was battery, and they allowed him to they agreed to withdraw the pleas where he got into the police car and tried to run the policeman over, and they dropped that charge in exchange for this one. It was an ugly incident, as the immigration judge found, of contempt for the law as well as violence and contempt for police officers. The board absolutely correctly applied modified categorical approach, and there was no conclusion other than he was convicted of a crime of violence and an aggravated felony. Do you have any questions? Thank you, Your Honor. Thank you. You have a minute for rebuttal. Just as a general point of information, I would like to just let the court know that there are additional issues as to whether or not there's sufficient record of the violence of this particular crime to be considered here. There's certainly a lack of context on the kicking. There is an argument in the briefs regarding the analysis of the Nevada statute at issue based on other provisions in the statute that if injury results, then it is a felony and not a misdemeanor. One of the points I wanted to make on that is that we don't care whether Nevada classifies it as a gross misdemeanor or a felony. The question is, was he sentenced to a year, and can we determine that it was a crime of violence? And the reason I am putting this forward as a felony versus a misdemeanor is not for that point, Your Honor, but if you look at the statute as a whole, the statute contemplates that if injury results, then it is a felony. Does a crime of violence require factual injury or only the use of force? It does not, Your Honor. And my point here is that you can look at the context of the entire statute to determine whether or not there was necessarily violence in the misdemeanor. Under the Pallares-Galan decision, they undertook the same type of analysis to indicate that California had a more stringent statute if the conduct at issue was of a more serious nature. And so that is my... But isn't that just a punishment difference? I mean, we send people to prison for serious bodily injury, but we send them to the county jail for up to a year if the injury was less severe. It's a battery we're talking about, right? A nonconsensual... I think what we're looking... The point I'm making here, Your Honor, is if there is a statutory scheme, this Court has previously looked to more serious offenses in the statutory scheme to determine whether less serious offenses necessarily included the elements to create an aggravated felony. Okay. You have more than exceeded your time. Thank you very much, counsel. I appreciate your extra time, and I thank the Court for the opportunity. Thank both counsel for their arguments. The case just argued is submitted, and we'll hear one more before we take a short break, and that is Vlasak v. Las Vegas Police Department.
judges: Graber, W. Fletcher, Tallman